ANDREW J. ERSKINE *vs.* OLIVER MOULTON.

Kennebec.    Opinion February 4, 1892.

*Deed.    Boundary.    Waters.*

A description in a deed which runs down the middle of a stream in which the tide ebbs and flows, thence across the stream to the upland on the southerly side, and thence on the southerly side of such stream, conveys to the grantee the land on that side between high and low water mark.

See *Erskine* v. *Moulton*, 66 Maine, 276.

On report.

This was an action for trespass *q. c.* and the writ contained three counts. The first describes the plaintiff's premises in the same terms as the deed from Bradstreet, the former owner of the entire locus, to himself, dated December 9, 1865, and alleges the usual acts of trespass, breaking of fence, destruction of grass, &c. The second count alleges that the plaintiff's land adjoins the waters of Worromontogus stream; that defendant's logs and timber were carried upon the land and wrongfully removed without tender of compensation for damage; and sets forth a cause of action under R. S., c. 42, § § 7 and 8. The third count describes the premises as extending to low water mark and alleges that the defendant used the same for booming and piling purposes and sets forth special damage.

The case was reported to this court for determination as to the true line between the parties, with the stipulation that it be sent back to *nisi prius* for assessment of damages in accordance with such determination.

The plaintiff claimed to the low water line as marked on the accompanying plan, while defendant claimed that the true line was the high water line or one near it called the Young line, and which had been established by the parties as appears in the decision of this court reported in 66 Maine, 276, and therein confirmed.

In 1872, Bradstreet, who appears before then to have owned all of the premises north of the stream and that portion south to the Young line, conveyed to the defendant, Moulton, by deed of warranty the premises, one boundary of which came before the court, in this case, for determination. In 1871, the plaintiff, Erskine, purchased from Bradstreet a lot containing one acre, the northern line of which is described as running "on the brow of the bank of the stream." No more conveyances were made by Bradstreet. After his decease his heirs gave, in 1887, a quitclaim deed to the plaintiff of whatever they might own, either land or rights of flowage, on the south side of the stream, "said rights of flowage having been reserved by our late father" in his deed, in 1865, to A. J. Erskine, &c.

Plan accompanying *Erskine* v. *Moulton*.

The parties agreed that the premises are the same as in the case of *Erskine* v. *Moulton*, 66 Maine, 276, to which reference is made, and that the disputed premises here are shown on plan. The Young line on said plan is the line established in the former suit above referred to.

It was further agreed that neither at the time of the deed from Bradstreet to Erskine, in 1865, nor at any time since, has said Bradstreet or his heirs had any dam on the Worromontogus stream other than on the premises conveyed to the defendant in 1872, and that he owned no premises to which rights of flowage could be appurtenant except the premises north of the Young line.

*Baker, Baker and Cornish*, for plaintiff.

*Heath and Tuell*, for defendant.

PETERS, C. J. The question of this case depends for its solution upon the meaning of this call in a conveyance of land : "On the southerly side of the steam." The following facts, made a part of this case, are found in a previous case between the same parties : "The Worromontogus stream flowing westerly is a tributary of the Kennebec river flowing southerly. About twenty rods above the confluence, the stream, leaving the upland, reaches a parcel of flat land elliptical in form, three to four acres in extent, and known as the Worromontogus cove. At the upper end of the cove, the stream divides, one channel flowing along the northern and the other the southern border to the lower end where they unite, flow under a bridge (constituting a part of the highway along the bank of the river,) and thence into the river. The cove is flowed by the tide backing up from the river and by freshets. At other times the land between the channels is bare, a small portion of it being more or less covered with small bushes. Logs can be so easily floated in there from the river, that the cove has been used for many years as a safe and convenient place for securing and booming them for rafting as well as for holding them to supply the mills at the head of the cove ever since their erection." *Erskine* v. *Moulton*, 66 Maine, 276.

Further facts are of importance in a consideration of the question. Joseph Bradstreet formerly owned the cove and the land on both sides of it. In 1865, he bargained a parcel on the south side of the cove down to high water mark to the plaintiff. But it was to be high water line as run out by one Young, a surveyor. He (Bradstreet) was thus cautious and exact as he was selling upland only, intending to reserve all possible flats and water privileges to himself. The surveyor, as it turns out, ran a line not coincident with a high water line in all places, but nearly so. It may be that Bradstreet intentionally retained to himself a small strip of upland in some places for his own convenience. At all events it was held, and we think correctly, in the case cited, that the "Young line" was made the dominant boundary in the deed. The result was that Bradstreet remained the owner of the flats on the southerly side of the cove and of a fragment of upland in some places adjacent thereto.

After this, in 1872, Bradstreet conveyed to the defendant a large amount of upland on the other or northerly side of the cove or stream, together with most of the cove itself, including that portion of it adjoining plaintiff's land. The calls in this deed that may be material to the present issue, partially repeated before, are as follows: "Thence easterly on said divisional line *across* said stream [the cove] to a point six and a half rods from the east side of said mill, thence southerly and westerly on the *southerly side of the stream*" [cove] to the point begun at. By this conveyance the defendant became the owner of land on the northerly side of the cove, extending across to its southerly side, and the question is whether his purchase goes across to low water line, or to high water line, or to the "Young" line.

It cannot reach the Young line where that line is above high water mark, because the grant includes no upland on that side of the cove. It demonstrably excludes any. It is regarded by the defendant as an unlikely thing that his grantor would retain the ownership of a narrow strip, less than a rod in width, which would be worthless to him after selling the other land. But probably the difference between the two lines was not remembered by the parties when the conveyance was made.

After the death of Bradstreet, the plaintiff, in 1887, procured from his heirs a release of their title or interest in the locus between the Young line and low water mark, and hence this litigation to ascertain whether the plaintiff or defendant has a better title to the flats.

We are satisfied that the defendant owns them. The literal meaning of the questionable words does not admit of a different conclusion. The line continues "across said stream," and "to a point" shown to be upon the upland, thence it runs "on the southerly side of the stream," not on or by the stream, but on its side. The call does not say on the side of the stream at low water. If the line be at low water mark it will be, we should judge from the plans in the case, an unusual distance into the stream during all the time excepting for a few moments in every twenty-four hours.

This construction is the one most compatible with the situation of the parties and properties at the time of the conveyance. The defendant then owned and operated a mill on the stream at the head of the tide. He needed booming grounds for his logs. A privilege for such purpose that was limited to low water line would be comparatively of little value. Every time a log rested on the flats its owner would be a trespasser. Really the privilege consists mainly over and upon the flats. From the plan it would seem that, while at high water the premises appear to be a cove, at low water they are mostly flats. Besides, while valuable to the defendant, the flats cannot be little better than valueless to any one else. After the sale to the defendant they were worthless to Bradstreet. There can be no reasonable doubt that he intended to cover them by his deed. There was no reason why he should not include them.

This construction does not militate against a line of decisions which establish the principle that a grant on, by, or down a cove or stream, or by the sea, goes to low water mark or to the middle of a stream. That construction is allowed unless the description be such as to show a different intention, the cases say. The class of cases alluded to apply to a grant of upland adjoining flats. Here we have the grant of flats adjoining

upland. The rule is one of inclusion and not exclusion. It adds and not subtracts. If a grant by the cove includes the flats in the one case, why not in the other?

But the stronger ground is that the intention seems conclusively shown by the peculiar language of the deed. "On the side of" a stream is more favorable to the defendant than a boundary "on" the stream would have been. And the case assimilates more to another class of cases a few of which may serve as illustrations of the principle established by them. If land be described as running "to a cove and thence along the margin of the cove," the grant excludes adjoining flats. *Nickerson* v. *Crawford*, 16 Maine, 245. The same effect follows when the call is "on the west bank of the creek." *Bradford* v. *Cressey*, 45 Maine, 9. Also where the words are "by the bank of the stream." *Stone* v. *Augusta*, 46 Maine, 127. The principle of these cases is the principle of the present case, adapted to new facts. It matters not whether the grant comes to a boundary from the one side or the other of it, and then running along the line. There is no reason for deviation in either case.

Whilst the present case may not strictly fall within either of the above classifications, being novel in its facts, the deduction derivable from such cases tends strongly in support of the defendant's contention.

According to the terms of the report the action will stand for trial only on the first and second counts of the declaration.

*Action to stand for trial.*

WALTON, EMERY, HASKELL and WHITEHOUSE, JJ., concurred.
LIBBEY, J., having been of counsel, did not sit.